Okay, we'll call case number 23-30129, Stewart v. Gruber, and we'll begin with Andrew Lee representing Glenn Stewart et al. Good morning, Your Honor, and may it please the Court. The main issue in this appeal is whether the District Court abused its discretion by excluding Mr. Nelson, the plaintiff's sole witness, an architect with 25 years' experience, due to late disclosure. As a direct result of this exclusion, the District Court granted a motion for summary judgment in favor of the defendant's architects because the plaintiffs weren't able to establish the required standard of care without presenting Mr. Nelson's expert testimony through affidavit. Essentially, the trial judge imposed the most severe penalty on the plaintiff's case by preventing their essential witness from testifying, a witness who was vital for the lawsuit to proceed. Can I ask you, when this case was removed, did you have any disagreement with their contention of the, I think they said residents, as evidence of citizenship, of the citizenship of your people? Judge, I wasn't trial counsel, but I understand that it was. You wish. I understand. I understand that it was agreed removal. That's what the record seems to reflect. So I believe that the removal was consented to. Okay. But consent isn't the question. The question is jurisdiction. Was there any dispute over the fact that they're from different states when you go through all of the listing of this and that? I don't see anything in the record that suggests that there was a dispute about the diversity. Okay. Is there any evidence about the citizenship of the parties? In the removal papers, I believe the removal papers were filed by my opponents, and they indicated that they were from Kansas, Arkansas, something like that, states that are not. Louisiana, of course. Sure. So that evidence was there. Of course, from is not the question. Right? So the question is citizenship. Right. So there were, and I believe the question would probably be best presented to them because they know their client's citizenship, but of course you drill down through the LLCs, and I believe that that was parsed. Corporate disclosure statements were filed. Yeah, but I think they said residents of your people because they didn't necessarily know the citizenship. So is there any question about that, about your people? My people are Louisiana residents. Okay. But are they citizens? And they are citizens as well. Okay. So they are fully Louisiana. That part, I can speak to. Okay. Right. Let me ask you about Mr. Nelson's report. Yes, Your Honor. Do you know why your client missed the deadline for filing the expert report? And do you know why your client refused to agree to a continuance? Right. So that goes to the first factor of the four-factor test, which I was going to get into, and I believe that we would have to concede that because the record doesn't reflect that trial counsel gave an excuse. I believe that the trial judge found that he took the position that the report was timely because it was previously produced in discovery as a field notes report, and the judge rejected that. So I'm willing to suggest that that's conceded, factor one is conceded and moved to the other factors. But before I do that, I do want to set the stage because the court has a number of cases in precedent that deal with this question of whether there's leniency to be had under Rule 26A, and one case in particular speaks to this question of the severity of the sanction that I started out with. The Betzel v. State Farm Lloyds case from 2007, which, Judge Clement, you were on the panel for, stands for the proposition that excluding an expert witness is a harsh sanction that should not be imposed lightly, and it goes further, and it says that where the witness is essential, as the court found it was in Betzel, that exclusion of the expert witness should not be imposed because it strikes to the heart of the party's case, calls it the extreme end of the sanction spectrum, and when it's outcome determinative, that the district court should meet the question of the lateness with the continuance, the fourth of the four factors. And in this case, the sanction was that sort of death penalty sanction where he was the only witness, the only expert witness who could speak to the standard of care. Yes, but you're aware under the rule of orderliness, if we have two opinions that disagree with each other, we have to go with the older one. Right, and I'm not sure which older opinion other than perhaps Geiserman you're referring to. So I'll speak to Geiserman, I'm certainly familiar with the rule of orderliness. So Geiserman has already been criticized by a subsequent panel of the court, and it's mostly with respect to the application of the second factor. And the second factor is criticality. And here, there really is no dispute that Nelson was critical, that he was the sine qua non of the plaintiff's case, that without him, they lose. And in Geiserman, the court, excuse me, Your Honor? It was construed against him because Judge Hicks applied Geiserman that says, well, in that case, you ought to meet your deadlines. And of course, that's the case, that all lawyers should be in that situation. But in this situation, it really is a death knell to the plaintiff. The plaintiff? Let's just say, you know, whether we want to figure out Geiserman versus Betzel or try to coordinate the two of them, there's a step beyond this one that I just don't understand. Why wouldn't your people ask for a continuance? The defendants actually negotiated for a continuance with them, willing to do it, but the defendants wanted extra time if they're going to give the plaintiffs extra time. Imagine that. Why wouldn't you all do that, your team? And failing to, how can they really contest what the district court did? Well, let me address the first part by saying, I don't know. And I don't have a way of knowing because the trial counsel, as the record reflects, is not even with my law firm. So in the situation that they declined to negotiate a continuance, which, by the way, was after the date passed. It was April 21, and the negotiations were happening on the 22nd and 23rd. So it's a mystery to me. I can't answer that. All I can say is that that five-day lateness should not be enough to exclude the expert under the decisions of this court. But there's a much longer list than the five days. And what I just mentioned is one of them. And, you know, you have, I'm assuming, arguendo, you have a phone and can call former counsel. So the notion that they're not at your firm, in my humble opinion, doesn't mean you can't talk to them. But the bottom line is, that was very important here. Because had they agreed to it, they could have moved for a continuance even beyond the date and said, oh, your Honor, I'm sorry, we missed a date, but we've agreed, the plaintiffs and defendants have agreed to move everything by just a few days. Can you agree to that? So that's one thing. But then the other thing is this five-day thing. What was submitted, the court found, was not sufficient as an expert report. So if you are, if you're on time, but you file a one-page thing that says, I think you messed up, that's my opinion, and that's your expert report, I don't think that's going to be found to have been a timely expert report. Right. And Judge, to the first point, I'm not suggesting that I can't ask trial counsel what was going through their head when they made this, what I consider to be a mistake. But it's not in the record. And so there's nothing in the record that I can help illuminate that situation. But I agree with you that the initial submission of the report also doesn't meet Rule 26. But subsequent iterations of it got closer and closer. It submitted the payment schedule. It submitted the resume of the witness who had not testified previously and so had no way of knowing that Rule 26 was, had all of these various requirements. And so you've got this dichotomy that I'm trying to draw here, Judge, between the lawyer that is submitting these things and a plaintiff who has not been a plaintiff in federal court before and a plaintiff's expert witness who has not been an expert witness in this case before. And the reason I bring that up is that the magnitude of exclusion is so significant. And this Court has multiple times, not just in Betzel, but multiple times said that sanctions of excluding the sole witness, the sole witness, should not be imposed lightly. And especially in a case like this when the mistakes were happening but they cannot be attributed to the plaintiff, Glenn Stewart. For example, there's nothing in the record that suggests that Mr. Stewart was ever uncooperative, that he didn't produce documents timely, that he didn't sit for deposition as long as they needed him to. And so, but the issue is that the Court has characterized this type of sanction as one of due process, due process that effectively ends the plaintiff's case. Okay, but you know, and I agree, we can reverse district courts on this kind of thing. But it's an abuse of discretion standard. We can't say that district courts can never start setting deadlines and try to get things moving. And this was, you know, a deadline after a deadline. The Court was pretty clear this needs to be met, meet it, and then it wasn't met, and then it wasn't met, and then it wasn't met, and then it wasn't met, and no continuance was moved for until after losing. It's not just the five days. It's not just, oh, there was just this little thing, you were at 1201 instead of 1159. So why is that something that we should, we don't reverse a bunch on abuse of discretion on these kinds of things because district courts, two of us have been district judges, one state, one federal, you know, have to run the room, you know. We can't, you can't just have the appellate court tell them, oh, you need to do this, you need to do that. Now, I understand, certainly we can reverse, so please don't misunderstand me. I'm just trying to understand why this falls in that bucket instead of the da, da, da, da, da bucket. Okay. So that's a good way to put it. There are two buckets. There are buckets of cases that say reverse in the situation when things like this happen, and there are cases that certainly say, like Geisserman, that don't reverse. So let's talk about the ones in bucket number one. Majestic Oil decided earlier this year, in that case, which Judge Clement, you were on the panel, as per curiam, the reversal occurred. The report was six months after the deadline in Majestic Oil. In Betzel, the report was not, the expert himself was not revealed until after the deadlines. Far more egregious than we have in this situation. And then in, in the cases that they rely upon, not only were they never the sole expert, except in one case, they were never the sole expert. There were multiple experts who could speak to causation or to damages, and the one expert who was being excluded was superfluous and didn't add anything. So that's the added factor. But also, they were, there was significant egregious missing of deadlines. In AIG Europe, which you, which they cited in multiple times, expert reports was on the final day of the discovery period, not the case here. Farber, cited at Metzger brief 24, filed the day before the deadline, and this was a novel witness who was proposing some sort of theory. The Batiste case was the only case where it was the sole expert, the sole witness speaking to the issue that they cite in their brief. And what happened in Batiste? Batiste was a case against Macklemore by a musician in New Orleans. Macklemore is a rock and roll band. And Batiste was saying, I've got a musicologist who can prove that my work was stolen and made into a famous song, I want a bunch of money from that. And Batiste puts up a musicologist, didn't like the report, the report got struck by the judge and said, okay, I'll be the musicologist. I, the plaintiff, will be the musicologist. In fact, that ghost wrote his report. And that guy was excluded. He should have been. He shouldn't, he didn't offer anything to the court. He was already disposed. They would have had to depose him a second time to talk about what are your qualifications as a musicologist. That's their only case in which the sole expert in the plaintiff's side of the case was in fact struck. So that's the difference. That's why this falls into bucket one. We've got certainly a missed deadline, and we've got subsequent reports that add to this Mr. Nelson's report, all of which were presented before the discovery deadline. He was offered up for deposition. They didn't take his deposition. They didn't ask to take his deposition. And on the last day of the discovery period, they filed a motion to eliminate and strike him. And then they filed a motion for summary judgment, which I want to speak to in the last couple of minutes before my time is up in the principal argument. The summary judgment follows, and in multiple cases, the court has said, including Majestic Oil, including Complaint of Bean, that if the striking of the expert impacts the summary judgment, the summary judgment, too, must fall. Now, they have argued that you can affirm summary judgment on different grounds, but to do that, you have to wade through hundreds of pages of documents. This is a very simple case, but the record is large because they filed a massive summary judgment motion, and a massive opposition was filed in response with multiple issues of fact in them, the main one being an affidavit of Dyke Nelson who said they breached the standard of care, and he expanded on his testimony, or he didn't have to give a deposition, so he says in the affidavit, here's how. So they got the affidavit, and the judge strikes the affidavit, summary judgment gets granted. This court should reverse that as well. Finally, Gruber argues that Daubert should exclude Nelson, and Gruber's counsel, I'm sure, will expound on that here today. As we pointed out in Gray Brief 11, however, Daubert on remand from the Supreme Court, the Ninth Circuit said you must hold a hearing to find Daubert. No hearing on Daubert was held here because Judge Hicks ruled that the Daubert motion was moot, and it was never heard, so this is not properly before the Court on Appeal. This Court in Carlson in 2016 said, quote, at a minimum, the district court must create a record in order to enter a motion to exclude based upon Daubert. There is no record here on which to affirm based upon, supposedly, Mr. Nelson not meeting the Daubert standard. I did not touch on prejudice, but I will now. That's the third factor. And here, they just speak in generalities as to what their prejudice was. Just remember the timeline, because in the record excerpts, we have the scheduling order. This was six months before trial, and it was a judge trial, not a jury trial. And there was no prejudice that they could articulate as to why they had to move on without our having an expert. With that, I'll reserve my time. Thank you. Okay. Thank you. You have some reserved time for rebuttal. We'll now hear from the defendants. We'll start with Susan Barnett-Burnall for Metzger. Good morning, Your Honors. May it please the Court. My name is Brooke Barnett-Burnall, and I'm here on behalf of Metzger Architecture and Thomas Metzger. I've got ten minutes, and I'll be focusing on the district court rulings and the four-factor tests particularly. Mr. Morrow has six minutes reserved and will be focusing on the deficiencies of the expert reports under Rule 26, and Mr. Miranda will be focusing on the deficiencies of the reports and affidavit. Can you address the jurisdiction question we asked earlier? Absolutely. I think Mr. Lee is correct. That we appropriately identified the citizenship of the— But you said residents, not citizens, so that's the question. I believe the citizenship is the same as identified in—as the residence was identified, as in the citizenship is all Louisiana. Every single entity, if you go down into the LLCs to the individuals, I think there was even an estate, all of it was a Louisiana citizen. That's not even close to right. It's not even residency. So we've said over and over again, residency and citizenship are different, but I'm looking at the notice of removal that you signed, and it says, after you say the estate of C. Stewart is a citizen of Louisiana, you say the annual report of LCG filed with the Louisiana Secretary of State lists Marion Stewart as a resident of Park City, Utah, not Louisiana, Chuck Stewart as a resident of Washington, D.C. Your Honor, that's right. I'm sorry. I did not look at that before today. That's right. There were—there were no same states. There was Utah. I think— How many residences does Chuck Stewart have? How many does the trust have? Does Chuck Stewart—I'm sorry for the audio. How many residences does Chuck Stewart have? Glenn Stewart. I'm sorry. Glenn Stewart. Oh, Chuck Stewart. That was the brother. I believe he had two different residences. So, under your own tests and your own pleading, you can't use—we have cases in certain circumstances, CAFA with minimal jurisdiction, where we sometimes have suggested that residents may be prima facie suggestion of citizenship, but that certainly can't be true when you point to a party that has multiple residences, could it? I believe that as long as the residence is not in Louisiana, then it would be. What case would ever say that? It's not the state. I do not have a case available at this time. I'm happy to brief that. What you're trying to say is you showed, okay, they're living in three different states, but none of them are the same as the defendant's state. That's your point? Because I think that was like Kansas. There was Kansas and Georgia on the defendant's side. Okay. So, you're saying as long as—so, your point is that in that removal, you were trying to be fulsome by saying every potential state that could be a citizen, none of which were Georgia? That's right, Your Honor. That's right. Okay. And we did submit requests for admissions to the plaintiffs at that time to identify all of their citizenship, and they did not respond. That was not responsive. So, before the removal. Okay. Okay. Thank you. Go ahead. Okay. So, you know, I think Your Honors know what was going on. I completely hit the nail on the head as it relates to the motion to exclude and Nelson's testimony. In his response to, you know, their response at why they rejected the opportunity for continuance, they said they had no authority and were unable to join in any continuance of the deadlines and dates. As a result, they failed and rejected the opportunity to have a later timely filed report be considered timely. They had multiple opportunities, not only to agree to the extension of the deadlines and the continuance that the defendants were willing to agree to in order to cure the prejudice that happened at the time that they missed their deadline. They also had multiple other opportunities. They could have requested a continuance themselves. They could have sought leave of court. They failed to do all that. They actually, you know, they acted like the scheduling order did not exist. They filed three untimely deficient expert reports and a deficient affidavit after we deadline. They threatened rule 11 sanctions against the defendants if we moved to exclude their expert for untimely and deficient expert reports. They made clear that the defendants were going to be required to comply with the scheduling order in effect, which had an expert report deadline for defendants of May 23, 2022. So one of the things you think is critical is that y'all had a deadline and you wouldn't be able to meet it if you don't know what the other expert says, but they weren't going to let you know until after your deadline, and they weren't going to agree to a continuance of your deadline, and that that's different from just this flopping around that we see in other cases where people are just late because they're busy and their kid is sick or something like that, and they miss a deadline. That's not what we have here. Absolutely not. They missed deadline after deadline after deadline. They acted like the scheduling order deadlines did not exist, did not apply to them. Not apply to them, but definitely existed as to us, and the rules did not apply to them, but the rules applied to us. And a continuance would have resulted in a third trial date, reopening discovery, another round of pretrial motions, more time for the plaintiffs to correct the shortcomings of their expert report prior to or after defendants had thoroughly briefed in nine separate filings, all of the deficiencies, would have allowed them more time, and that's fundamentally unfair, prejudicial to defendants, and just leads to perverse consequences. It flips the rules on their heads. They're required to comply with the rules. So are we. And it's just, it's hardly the proper remedy here when we were trying to cure our own prejudice and work with the plaintiffs. What you're saying is if we rule for them, then plaintiffs are going to want to kind of pull that so they can find out what their expert needs to say and then say it a few years later, and then, okay, good, now we've said what we need to say. You're saying that it kind of flips things of you need to meet deadlines, and if you miss a deadline just accidentally and so on, that can be fixed, but it should be fixed by like agreeing to a continuance or something like that. That's right. You're saying that's a different bucket, a different roadway. If they produced a completely compliant Rule 26 report on that five days after, that would be a different situation, but that's not what they did. It was a deficient report. It was not a Rule 26 compliant report, and they kept producing reports after that, the last one being three business days before the end of discovery. Two of those days were already reserved for depositions. So that was one day before the end of discovery, and it was after our experts were deposed, after our experts produced their reports with their final second supplemental report, which was dated June 8th, but not produced until June 15th. Then the affidavit comes on September 2nd, well after the discovery period. And as Gianna asked, why didn't they agree? They had no excuse not to agree to a continuance, not to work with defendants. They just had absolutely no excuse. They just said they had no authority and would not be able to do so. Well, okay, I mean, that is itself, in my view, problematic. I mean, so that's something for the court to consider, isn't it? Absolutely. The district court can consider that. Now, you're not required to agree with your opponent. Absolutely not. But where that benefits you, it's a little — I don't know. The benefit — It was kind of rare that me offering the other side some extra time meant they wouldn't give me any extra time. Well, it wouldn't work — If they needed the extra time, not if they didn't. Well, they'd already passed their deadline. We're now in May. Our expert report's deadline is May 23rd. On May 4th, they're saying, we're not giving you any more time. Where we had agreed to extend their deadline, there would be a supplemental report, which would be well after the 21st, which was their deadline, which would push back the date. So let me ask you this. I mean, your opponent basically says, okay, all that's really interesting, but the fact is this court just kind of doesn't let you strike the only expert that's really needed because that would be an end of the case. So we just can't — we can't do that on the Court of Appeals. What's your answer to that? This court has struck the sole expert. And not only that, I think it's more of a sole expert. It's the important, the critical expert testimony. This has happened several times when there's such a blatant disregard for the scheduling order deadlines. Multiple violations, not one, multiple violations of the scheduling order. Batiste was one. That was the sole expert. There was Fulmer, which was Sterling, as well as Borden, Honeylove, and Barnes, all recent opinions where the sole expert or the critical expert was struck, and a summary judgment in several of those was granted. It's such a blatant disregard. The rules exist for a reason. The court has to have ability to enforce its own scheduling orders, its own docket, and the federal rules. And that's what the court did here. So I've got about 20 minutes. I just want to say that — 20 seconds. I'm so sorry. We don't want 20 more minutes. 20 seconds. That there was also prejudice. Again, the prejudice occurred after they missed their deadline and continues after they reject the opportunity to extend deadlines. So for those reasons, we ask that you affirm the district court rulings. Thank you very much. Thank you. All right. We'll hear from Mark Morox. Moreau, Your Honor. Moreau. Ah, yes. Judge, I have six minutes. I represent Mr. Keeney, and the scope of my argument is going to be referencing the deficient report. And so when you look at the totality of what the district court did, it didn't just apply hyper-technical, untimeliness rule under the rules. It looked at everything. It looked at the discussion of counsel to continue the deadlines to accommodate everybody on the late report, but it also looked at the deficient report, and that's what I want to address. When we call experts or hire experts in cases, we're relying upon their specialized knowledge and skill, education, training, and background to give us something in the trial court that lay people cannot provide. And they have a special accordance to give opinion testimony because of that extra training and skill. And what the federal rules have done over the years with all the amendments to the federal rules is to try to accommodate parties who hire experts but try to reduce discovery. And if you look at the 1993 Advisory Committee notes to Rule 26, that's exactly the point that they make, that when you hire experts, one of the reasons for these rules that we put in place to require data and opinions and specific information and exhibits and CVs and rates in the rule is to reduce the time of the deposition or the need for the deposition. And that's not only in the committee notes, but that's also in the case law as well. And it's something, it's the very reason that the rule exists. And in this case, not one single report from Mr. Nelson, the expert, and not even the affidavit, complied with the requirements that you would expect from an expert, especially an architect who is trained, skilled on something that's very highly skilled and it's a very difficult thing to do to become an architect. All he says is, I looked at this problem, the problem exists, and I think this is a failure of the standard of the work. Not even in his reports and not even in his affidavit, until his affidavit, did he distinguish between the actual work that was done that he saw and the drawings because he did not cite the drawings in his report. He's a design person. The case against the defendants was a design case, and he didn't address that in any of the reports and maybe addressed it in one sentence in the affidavit by saying it fell below the standard of care, which leads me to my next point. What is the standard of care? Because it's the burden on Mr. Stewart to establish that standard of care of an architect, which under Louisiana law, which is going to be applied to this case, a case in diversity, is a very high standard. And the problem is that all he says is that breaches the standard. What's the standard? Is there a code? Is there a building safety code? Is there an architectural digest code? Is there a local building code? Anything like that. Nothing. He cites none of that. He cites none of the drawings that he reviewed, if any. And as a matter of fact, he only makes one sentence, a clause in part of a sentence, in the field report, which is really essentially the same as all the subsequent reports in April of 2022, May of 2022, and June of 2022. It's the same thing. He doesn't look at the drawings, and that is what an expert architect is retained to do. The one point that I want to make on this argument is that in the appellant's brief on this issue, they never address the issue of the contents of the report falling below the requirements of Rule 26A2B1-6. None. And I think I heard in his oral argument that they concede that point, that the contents of the report did not comply because it didn't provide the sufficient data or opinions in that report. Quite frankly, the argument that we're supposed to take his deposition means that the defendants are supposed to take the deposition of the expert, whose testimony at trial is going to be limited to his report, and then allow him to expand his report at deposition so we can figure out what he's going to say at trial, so then he can testify at trial, which is not . . . We would have to pay his fee, Your Honor, unless there was a different agreement among counsel, and typically it's different. Yes, Your Honor. That's exactly what the 1993 amendments of the Advisory Committee rule notes indicate in the amendment to Rule 26 in 1993. It's to either obviate the necessity for the deposition or take the deposition on certain factors. In other words, you limit the amount of the deposition, especially with an expert. Some of the witnesses in this case testified for 12 hours. So without having in his report what drawings you relied upon, if you saw a problem, what drawings did you look at to determine whether or not . . . And you don't want the expert to be able to prepare for what you're going to ask at trial that will cause some problems. Yes, Your Honor. So that's always the kind of difficulty in deciding whether to do a deposition of somebody like that, because you're trying to decide, should I let them know what I'm going to ask at trial, or should I just surprise them? But if you don't know what the expert thinks, then it's kind of hard to prepare for trial or deposition. That's right, Your Honor. It's even a risk for me to argue these points today, because I feel like today, if the case does get remanded back for him to allow the report, I've basically provided a road map to give the expert to what to put in his report, if and when he's allowed to supplement the report. And so that is a strategic problem for me, along with taking his deposition. So I'm in . . . I have to walk a little bit of a high wire, but I do want to make the argument, and I do want to make the point to the Court that that's the reason for the rule. It has to be in there. That way, when I take his deposition, it can be a 2- or 3-hour deposition, not an 8-hour deposition for him to go through the drawings that he did not cite in his report. And that's part of the problem. That's the big problem in this case. Any other questions? My time is up. Okay. Thank you. We'll now hear from Juan Miranda for Morton Gruber. May it please the Court, my name is Juan Miranda, appearing on behalf of Morton M. Gruber and Gruber & Associates, LLC. First and foremost, Your Honors, Gruber adopts and incorporates all of the oral arguments made by Metzger and Keeney's counsel, and we argue separately to address the alternative grounds for affirming the exclusion, Nelson's exclusion, and the motion for summary judgment. So should the Court find that exclusion was improper under Rule 26 and Rule 37, Nelson must nevertheless be excluded under Rule 702, the Federal Rules of Evidence, and also under Daubert because of Nelson's complete lack of methodology and data employed in reaching his conclusions. Why isn't that something we would remand if we ended up ruling in favor of the plaintiff on the rest of this? Because the record is clear in this case, Your Honor, that the report has no data. As Mr. Morrow just argued, the report cites to no architectural drawings that were used to design the property, cites to no field reports, cites to no building codes or project specifications. It's absolutely devoid of any documents or data used to support any type of methodology. There's no semblance of methodology in the report. And so it's not necessary for the district court to have to redo the Daubert after it's already put in the record that, and I quote in the ruling said, that there is no apparent methodology in Nelson's reports. So it's not necessary to remand when the record's complete in that regard, Your Honors. Exclusion under Daubert would also yield the same results as exclusion under Rule 26 because the appellants would have no expert to be able to establish what the standard of care is and whether there was a breach of that standard. As this Court's aware, the Daubert motion was rendered moot, but this Court nevertheless has the authority to rule on the Daubert issue if it decides to overrule the Rule 26, Rule 37 exclusion. As I mentioned earlier, the district court alluded to those alternative grounds by saying that there was a lack of any basis for the opinions and any apparent methodology for Nelson's opinions. And for the reason discussed by Mr. Mora earlier, the report is nothing more than observations made during a single site visit prior to this litigation ensuing. In the context of architect experts, the architect is required by 702 and Daubert to review and analyze the project architectural drawings, the project specifications, building codes, depositions, fact witness depositions, which Nelson failed to do. And he makes no reference to that in his report. In short, after applying the Daubert standard, the Court is going to inevitably arrive at the same opinion that the district court did, which is that Nelson needs to be excluded from testifying at trial because his opinions are nothing more than ipsy-dixit opinions. Something that appellants' counsel mentioned is that the district court was required to hold a Daubert hearing. That's incorrect, Your Honor. The case cited by counsel is the Carlson v. Bioremedy case, which specifically states that a Daubert hearing is not always necessary. Rather, the minimum requirement for the district court is to create a record of a Daubert inquiry. And in this case, it's our position that the Court did that when it reviewed the report and found that Nelson's report lacked any basis for his opinions and contained no apparent methodology. In closing, Your Honors, if the Court decides to reverse the Rule 26 and Rule 37 exclusion, appellees respectfully request that the Court nevertheless exclude Nelson pursuant to Rule 702 and Daubert and that the Court also affirm the summary judgment because they have no expert to be able to prove the standard of care or breach thereof. Thank you, Your Honors. Okay. Thank you. Now we'll hear the rebuttal. Yes, Judge, of all three speakers on behalf of the defendants, none of them said why this is an egregious case in terms of timing. It's a case in which the initial report was late. I've conceded that. They had no excuse for it being late. And then it was amended and amended and amended, all within the discovery period. Every case that they rely upon involves expert reports that were not filed at all, experts that were not revealed until after the deadlines. And, in fact, in the Betzel case, which the Court reversed, the district court, that was one of those egregious cases. So I've not heard anything from Ms. Bernal or Mr. Moran or Mr. Morrow why this is an egregious case in terms of timing and an egregious case that merits the death penalty to the plaintiff's claims. And they also did not address the multiple cases. Are there any cases where the person who's got the problem with the expert report missing the deadlines hasn't asked for a continuance? Well, I did not. Let me just mention on that point that the issue of continuance, which is factor four, is not a question of whether they should have asked for a continuance in the course of producing late. That's what they're trying to conflate here, and that's what the judge did. It's a question of whether the judge, looking at the motion in limine to exclude the expert, could consider continuance at that point in time. And we pointed this out in our brief that they are mixing up the two and conflating them. So it's conceded that the plaintiff's counsel at trial did not ask for a continuance and, in fact, was difficult when the question was raised. Right. And, in fact, went against it for the defendants. So, I mean, I think that's an addition to it. It's not just, oh, we're just going along, we thought we did okay, whatever, whatever, and the court should have considered a continuance. It's more than that here, isn't it? But, Judge, those two time periods, those two points in the timeline should not be conflated. Complaint of being, reiterating the Sierra Club four factors, is talking about — Whether we conflate them or not, shouldn't we at least look at them in considering abuse of discretion? You can. I've already given up factor one. That falls within factor one. What's your excuse, trial counsel? I don't have one. And, in fact, you can say it's multiplied. Maybe it's enhanced. Maybe that's given more. But on factors two, three, and four, it has to go to the plaintiff's way. And on four, the question is whether a continuance at the time that the judge ruled could remedy the prejudice that the defendants suffered by the late filing of or the late submission of the expert reports. That's the question. Were they prejudiced to the point that we need a continuance to cure it? That's the first question, according to the court in 2016 in complaint of being. That is, quote, we have repeatedly stated that a continuance is the preferred method of dealing with a party's attempt to designate a witness out of time, close quote. Preferred, but we haven't said you always have to grant one because otherwise, like I said, you could never run your court as a district judge if everybody just can keep flopping in at the last minute and you have to keep continuing, continuing, continuing. And things do happen over time. Witnesses forget. People pass away. People move away. Things do happen. So the notion that we should just forever continue the case until finally your expert can figure out something to say, that doesn't sound right to me. I hope you don't interpret my suggestion that way. I'm just stating that we're talking a lot about the trial counsel's behavior at the early stages. I'm talking about whether the trial judge, Judge Hicks, considered whether a continuance could remedy the prejudice, and he didn't. He instead looked at that first behavior and said that dictates how I consider factor four to go with the defendants. Instead, he should have said, okay, defendants, you claim that you're going to be put in a prejudicial situation. Let's remedy that by we're going to give them an opportunity to either or we're going to allow this report to go in in the state that it's in, and you now have an opportunity to respond to it such that if you're a prejudice, you can cure it. Yes, Judge? The value of this case? In the expert's report, it's in the millions of dollars in terms of the damages that have been estimated. That's the design component. Do you have a claim against the construction company? No, Your Honor. The claim is only against the architects for the design piece. And so with that, I'd like to touch briefly on Mr. Morrow's argument in which he suggested that we did not contest the suitability of the reports. At Blue Brief 9, we did point out that the trial judge, in fact, intimated that this final report might have been compliant, and so that final report includes all of the components of Rule 26 that they contend were not met. And so the report was not as beautiful or as good as they would like it to be, but it expresses the opinions that the air duct, specifically the HVAC, was poorly designed and caused its problem. With that, Your Honors, my time is up. Thank you for your time. Okay. Thank you. At this point, oh, and this case is under submission. Thank you. We're going to take a break until 1030.